ABBOTT LABORATORIES, Plaintiff,

v.

CENTAUR CHEMICAL COMPANY, INC. and Fisher Scientific Company, Defendants.

CENTAUR CHEMICAL COMPANY, Plaintiff,

v.

ABBOTT LABORATORIES, Defendant.

Nos. 77 C 0602, 78 C 0665.

United States District Court, N. D. Illinois, E. D.

Aug. 1, 1980.

Ronald E. Larson, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., Robert D. Weist, North Chicago, Ill., for plaintiff.

Arthur O. Klein, Klein & Levine, New York City, William M. Lee, Jr., Thomas E. Smith, Chicago, Ill., John M. Webb, Pittsburgh, Pa., Lee & Smith, David D. Kaufman, Chicago, Ill., John M. Webb, Webb, Burden, Robinson, Webb, Pittsburgh, Pa., Emmanuel J. Lobato, Robert E. Burns, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Abbott Laboratories ("Abbott") has moved that this Court enter an order disqualifying Gerson E. Meyers, R. Howard Goldsmith and the professional corporation known as Dressler, Goldsmith, Shore, Sutker and Milnamow, Ltd. (the "Dressler Firm") from representing Centaur Chemical Company ("Centaur") in the above-captioned cases. The grounds for the motion involve Abbott's claim that Ernest Cheslow, a partner of the Dressler firm, has represented and continues to represent Abbott in an unrelated matter, and that any representation of Centaur Chemical Company by the Dressler firm in the above-captioned cases would constitute a breach of the duty of loyalty owed to Abbott by the Dressler firm. Centaur argues that the Dressler firm does not currently represent Abbott, and that because the Dressler firm's prior representation of Abbott is not substantially related to the actions now pending before this Court, there is no possibility of conflict of interest.[1]

The facts in this matter are undisputed. Ernest Cheslow, a partner in the Dressler firm, represented Abbott in a patent interference action entitled *Johnson v. Corbin*. On November 17, 1977, Robert L. Niblack appointed Mr. Cheslow as associate attorney "to prosecute the interference and to transact all business in the Patent Office connected therewith." Mr. Niblack, one of Abbott's in-house attorneys, was designated as "principal attorney" for Abbott with regard to the interference action, and the Patent Office was directed to send all correspondence relating thereto to Mr. Niblack, rather than Mr. Cheslow or the two other attorneys representing Abbott in the inter-

---

1. Centaur also argues that Abbott waived its right to demand disqualification by its acquiescence to the Dressler firm's representation of Robert A. Stough & Company in an unfair competition and patent infringement action brought by Abbott against Stough in 1977. The decision of the Court on the pending motion makes it unnecessary to respond to this argument.

ference action. Mr. Cheslow did prepare and file a number of documents in the interference action and presented the oral argument on behalf of Abbott at the final hearing before the U. S. Patent Office Board of Patent Interference on September 6, 1979.[2] Neither Mr. Cheslow nor any other member of the Dressler firm has been involved in any capacity on behalf of Abbott since that date.

Abbott contends that Mr. Cheslow's representation is of an ongoing and continuing nature and that Mr. Cheslow may again be called upon to represent Abbott in the *Corbin* matter. In support thereof, Abbott emphasizes the possibility that appeals may arise from the Board's decision, or that a civil action may be filed with the United States Court of Customs and Patent Appeals under 35 U.S.C. §§ 145, 146.[3] The problem with this argument is that it is wholly conjectural in two important respects. First, while it is possible that the *Corbin* matter will generate further legal work, it is equally possible that the matter has reached its conclusion. More importantly, even if an appeal or other action is taken in the *Corbin* matter, there is little reason to believe that Abbott will choose to have Mr. Cheslow represent it. The fact that Mr. Cheslow was one of four attorneys involved in the matter before the Board does not mandate a finding that he automatically will be chosen to represent Abbott in future matters. Moreover, Abbott does not assert that it has any understanding or agreement with Mr. Cheslow regarding his representation of Abbott in the event of appeal or other action. This is not a case where a party is represented by only one attorney or firm. In the *Corbin* matter, Abbott was represented primarily by its in–house counsel. Abbott chose to utilize Mr. Cheslow as an associate attorney. Abbott may or may not choose to hire Mr. Cheslow again–but this Court cannot grant a motion to disqualify based upon pure speculation.

In light of the fact that Abbott grounds its motion on little more than a possibility that Mr. Cheslow may continue to represent Abbott in the *Corbin* matter, and in light of the fact that nearly eleven months have passed since Mr. Cheslow last was asked to act on behalf of Abbott, this Court does not believe that the Dressler firm must await the passing of every possible deadline for appeal or other action before assuming that their representation of Abbott has terminated.[4]

The applicable test for determining whether a prior representation should dis-

---

2. On June 17, 1980, the U. S. Patent Office Board of Patent Interference issued a six–page decision awarding the subject matter of the inventions of five counts to Abbott and awarding the subject matter of the invention of one count to Corbin.

3. Abbott also raised the possibility that either party may request a rehearing reconsideration or modification of the Board's decision. However, the 30–day time limit within which a party is to file a request for rehearing, reconsideration, or modification has passed without this Court being notified that any such request was made.

4. While this ruling does not resolve the disqualification motion, it does help establish the appropriate standard to be used in determining whether the Dressler firm should be disqualified from representing Centaur. If this Court had found that the Dressler firm's representation of Abbott was continuing at the same time that the firm was representing Centaur, this Court would review such conduct under Canon 5 of the Code of Professional Responsibility, which states that, "A lawyer should exercise independent professional judgment on behalf of a client." In interpreting this Canon and the disciplinary rules that emanate therefrom, courts have voiced grave doubts about an attorney's ability to give undivided loyalty to the client who is also an adversary in a concurrent proceeding. *International Business Machines Corp. v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). *See* Ruder, Disqualification of Counsel: Disclosures of Client Confidences, Conflicts of Interest, and Prior Government Service, 35 Bus.Law. 963, 974–976 (April 1980). These courts have opined that regardless of whether the cases are at all related, it would be questionable conduct for an attorney to be involved in an action against his current client without the knowledge and consent of all those involved. 579 F.2d at 280, 528 F.2d at 1386. In *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 229 (7th Cir. 1978), the Seventh Circuit indicated a similar willingness to disqualify based upon an ongoing conflict of interest, stating:

qualify counsel was established by the Seventh Circuit Court of Appeals in *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978). In that case the Court held that "where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related'." [5] 588 F.2d at 223. The Seventh Circuit went on to detail a three–step inquiry to be used in determining whether matters are substantially related. 588 F.2d at 225. However, this Court need not follow through with such an analysis in the instant case because Abbott has conceded that the *Corbin* patent interference action is "unrelated" to the present litigation.[6]

■ Accordingly, this Court concludes that Abbott's motion for the disqualification of Gerson E. Meyers, R. Howard Goldsmith and the professional corporation known as Dressler, Goldsmith, Shore, Sutker and Milnamow, Ltd. from representing Centaur is denied. The Court further concludes that Abbott has not instituted this motion to disqualify in bad faith or for purposes of harassment and delay. Accordingly, Centaur's request for attorney's fees accrued in responding to Abbott's motion is also denied. It is so ordered.

---

[t]he principle enunciated in this canon [Canon 5] may require disqualification where a lawyer is concurrently representing adverse clients even if the subject matters of the representations are completely disjunct.

5. The substantial relationship test embodies the substance of Canons 4 and 9 of the Code of Professional Responsibility. 588 F.2d at 224. Canon 4 states that "a lawyer should preserve the confidences and secrets of a client" and Canon 9 provides that "a lawyer should avoid even the appearance of professional impropriety." In considering these two Canons, the Seventh Circuit stated that, "the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." 588 F.2d at 224.

6. Even if Abbott had not conceded that its patent interference matter is unrelated to the pending actions against Centaur, this Court would have reached the same conclusion after going through the analysis described in *Westinghouse*. Because of the nature of the interference proceedings, involving basically technical information going to establish the date of the "invention" of a particular method to prevent reproduction, the type of information that might be communicated to counsel in confidence could not be related to the subject matter of the Centaur litigation.