**RANSBURG CORPORATION, Plaintiff,**

v.

**CHAMPION SPARK PLUG COMPANY, Defendant.**

No. 86 C 103.

United States District Court, N.D. Illinois, E.D.

June 30, 1986.

Clyde F. Willian, Gary M. Ropski, John A. Crook, III, Willian, Brinks, Olds, Hofer, Gilson & Lione, Ltd., Chicago, Ill., for plaintiff.

Dugald S. McDougall, Clarence J. Fleming, Robert W. Slater, McDougall, Hersh & Scott, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Before the Court is defendant Champion Spark Plug Company's ("Champion") motion to disqualify the law firm of Willian Brinks Olds Hofer Gilson & Lione Ltd. ("Willian") from this case.[1] The Willian firm represents plaintiff Ransburg Corporation ("Ransburg") in this action and Champion is represented by McDougall, Hersh & Scott. Champion claims that at all times relevant to this motion Willian represented both Ransburg and Champion, the adversaries in this litigation, and that this dual representation violates the American Bar Association Model Code of Professional Responsibility (hereinafter "ABA Code"). The ABA Code has long been the established norm for guiding ethical conduct in the federal courts of this district. *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982); Local General Rule 3.54(B).

Specifically, Champion argues that the activities of Willian violate the disciplinary rules contained in canons five and nine of the ABA Code. Willian denies that it has violated any of the disciplinary rules and affirmatively asserts that the factual circumstances surrounding this matter prove that they have fully complied with the ABA Code requirements. The Court disagrees

---

1. Apparently Willian has more than one form of business organization. For the purposes of this motion, therefore, Willian Brinks Olds Hofer Gilson & Lione Ltd. (a professional corporation) and Willian Brinks Olds Hofer Gilson & Lione (a partnership) will be treated as one and the same entity.

with Willian's application and interpretation of the ABA Code and must disqualify the firm from representing Ransburg in this case.

## FACTUAL BACKGROUND

Ransburg instituted the present action alleging that the DeVilbiss division of Champion has violated Ransburg's patent for incipient spark detection in electrostatic coating (painting) system power supplies.[2] DeVilbiss manufactures these coating power supplies in competition with Ransburg. The complaint seeks damages and to enjoin Champion from future infringement of the patent over incipient spark detection.

The complaint was filed on behalf of Ransburg by Clyde F. Willian, Gary M. Ropski and John A. Crook, III, all of whom are members of the Chicago office of the Willian firm. Willian and its predecessor organizations have represented Ransburg in all of its patent litigation matters since 1956.[3]

Champion is a client of more recent vintage. Willian opened a Toledo, Ohio office in November of 1984. Toledo, not by coincidence, is where Champion's corporate headquarters are located. The managing partner of Willian's Toledo office is Vincent Barker. In the course of Mr. Barker's legal career he has been associated with a number of firms, some of which did substantial business for Champion and/or its DeVilbiss division. Immediately before joining Willian Mr. Barker had been a partner at the Toledo firm of Fraser, Barker, Purdue & Clemons. When the Toledo office of Willian was opened Mr. Barker asked one of his former law partners, John Purdue, to join him at the Willian firm. Mr. Purdue accepted the "of counsel" employment opportunity and brought with him the Champion patent prosecution work from the Fraser firm. In April of 1985 Mr. Purdue left his "of counsel" position at Willian, but his services remained available to them on a contract basis. After Mr. Purdue departed, Willian continued to represent Champion in patent matters and also began some representation of the DeVilbiss division in patent prosecutions. In 1985 the Toledo office of Willian billed Champion and its DeVilbiss division in excess of $50,000 in legal fees. It appears that the subject matter of Willian's representation of DeVilbiss is not directly related to the pending litigation between Champion and Ransburg.

The complaint at issue here was filed on January 7, 1986 and represented the end of several months worth of negotiations between Ransburg and Champion concerning the alleged patent infringement by the DeVilbiss division. It is uncontested that at the time the complaint was filed both Ransburg and Champion (including its DeVilbiss division) were clients of Willian.

Subsequent to the filing of the complaint, on January 14, 1986 Champion through their inside counsel, Oliver E. Todd, Jr., sent Mr. Barker a letter informing the Willian firm that in view of the litigation between Ransburg and Champion it was necessary to discontinue the use of the firm. In the same letter, however, Mr. Todd asked that some of the work in progress be completed by Willian.

On January 23, 1986, in a letter to John Purdue, Mr. Todd instructed Mr. Purdue to remove all of the Champion files to his office instead of leaving them at the Willian offices. In the same letter Mr. Todd expressed his intent to sever all connections between Willian and Champion. The last date on which Willian employees did work for Champion is January 23, 1986. Since that date Willian has no work in progress on behalf of Champion or its DeVilbiss division.

---

2. DeVilbiss merged with Champion in 1970. The DeVilbiss division manufactures health care products, industrial robots, and coating application equipment. Champion also manufactures spark plugs, ceramics, and wiper blades.

3. The Willian firm began as Wilkinson & Huxley in 1917. From the mid-1960's until 1983, when the present name was adopted, the firm was known as Hume, Clement, et al.

## DISCUSSION

Champion argues that Willian has breached its duty of loyalty and has created an appearance of impropriety and must therefore be disqualified from this litigation in light of canon five, canon nine and applicable case law. Willian counters that disqualification is inappropriate because there is no "substantial relationship" between the work Willian did for Champion and the subject matter of the present litigation. Moreover, Willian argues that disqualification would taint the underlying trial and that the prejudice to Ransburg from disqualification outweighs any harm to Champion.

■ Willian's argument that the "substantial relationship" test governs the Court's consideration of the disqualification motion is mistaken. The substantial relationship test, developed in the canon four arena, is wholly irrelevant in this context.

Canon four provides that: "A Lawyer Should Preserve the Confidences and Secrets of a Client." The substantial relationship test finds its beginnings in this precept.[4] In order to avoid a prophylactic rule prohibiting lawyers from ever representing adversaries of former clients, canon four and its accompanying ethical considerations and disciplinary rules have been interpreted to allow an attorney to represent a party adverse to the interests of a former client so long as the subject matter of the litigation is not substantially related to the work the attorney performed for the former client. If the subject matter of the litigation is not substantially related, the confidences and secrets of the client can adequately be preserved. The substantial relationship test is well established in the Seventh Circuit. *See e.g. Schiessle v. Stephens,* 717 F.2d 417 (7th Cir.1983); *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir.1982); and *Novo Terapeutisk, Etc. v. Baxter Travenol Laboratories,* 607 F.2d 186 (7th Cir.1979) (en banc).

The substantial relationship test does not, however, have application to canon five which concerns itself with an attorney's duty of loyalty to present clients. The leading case on this distinction is *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976). There the Second Circuit held that where an attorney sues an existing client the propriety of the conduct "must be measured ... against the duty of undivided loyalty which an attorney owes to each of his clients." This difference has also been recognized by the Seventh Circuit. *See Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 229 (7th Cir.1978) (recognizing that canon four and five involve differing considerations); *Whiting Corp. v. White Machinery Corp.,* 567 F.2d 713, 716 (7th Cir.1977) (adopting the district court opinion which distinguished the canon four/substantial relationship test from canon five/duty of loyalty cases); *Abbott Laboratories v. Centaur Chemical Co.,* 497 F.Supp. 269, 271 n. 4 (N.D.Ill.1980) (noting that if the representation of both clients was continuing the court would have to review such conduct under canon five). Therefore, the substantial relationship test and its three-prong analysis, which Willian advocates, has no application here in a canon five duty of loyalty case.

It is apparent that Willian has been suffering under the mistaken impression that the substantial relationship test applies to canon five situations from the very beginning. Mr. Barker's affidavit relating how the Willian firm approached the matter is enlightening. He states:

> In late September 1985, I received from Willian Brinks—Chicago a routine conflicts inquiry. That inquiry informed me that Willian Brinks—Chicago office had been asked by Ransburg Corporation ("Ransburg") to investigate possible infringement of one of Ransburg's patents

---

**4.** The substantial relationship test also relates to canon nine insofar as violating the secrets and confidences of a client also violates the ethical obligations of canon nine which require an attorney to avoid the appearance of impropriety. *See generally Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir.1982).

by DeVilbiss. I discussed the matter by telephone with both Mr. Willian and Mr. Ropski. I told Mr. Willian and Mr. Ropski that all of the work that Willian Brinks—Toledo had done for Champion was for Champion itself, except for a small amount of work Richard MacMillan [an attorney at Willian Brinks—Toledo office] had only recently done for DeVilbiss, involving a rewrite of a patent application. *I informed Mr. Willian and Mr. Ropski that none of the work Willian Brinks—Toledo had done for Champion or DeVilbiss was in any way related to the subject matter of the patent suit.* I came to the conclusion that there was no conflict of interest, and Messrs. Willian and Ropski agreed.

(emphasis added).

"Under the [ABA] Code, the lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed." *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976).

Despite the fact that Champion was indisputably a client of Willian's on January 7, 1986 when the complaint in this case was filed, the Willian firm boldly argues in its sur-reply that because Champion has terminated Willian as its representative, Champion should be treated as a former client making Willian's actions reviewable under canon four.[5]

█ The fact that a client terminates its relationship with a law firm after that law firm sues it is not surprising. The termination should not, as Willian contends, shift the review of the ethical conduct to canon four. In cases factually similar to the present action, courts have found that status as a present or former client should be determined at the time the complaint is filed. *See Unified Sewerage Agency, Etc.*

*v. Jelco Inc.,* 646 F.2d 1339 (9th Cir.1981); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 435 F.Supp. 84, 95 (S.D.N.Y.1977, *aff'd in part, rev'd in part on other grounds,* 567 F.2d 225 (2d Cir.1977). *See also International Business Machines Corp. v. Levin,* 579 F.2d 271, 281 (3d Cir. 1978) (holding that IBM was a present client of a law firm even though the law firm had no specific assignment on hand the day the complaint was filed and despite the fact that the law firm worked on a fee for services basis and was not under any retainer agreement with IBM).

In *Fund of Funds, Ltd. v. Arthur Andersen & Co., supra,* Arthur Andersen's regional legal counsel, the Morgan Lewis firm, conducted an investigation against Andersen that resulted in the filing of the complaint. Andersen alleged that plaintiff's named counsel was the alter ego of Morgan Lewis and moved to disqualify Morgan Lewis from any involvement in the ensuing action. The court found Andersen to be an existing client of Morgan Lewis for the purposes of the lawsuit even though Andersen had instructed Morgan Lewis to withdraw from all representation of Andersen prior to the filing of the motion to disqualify. The fact that Morgan Lewis represented Andersen at the time the complaint was filed compelled disqualification.

To hold otherwise would allow such unethical behavior to continue unrestricted because a law firm could always convert a present client to a former client merely by seeking to withdraw after suing a present client. *Unified Sewerage Agency Etc. v. Jelco Inc.,* 646 F.2d 1339, 1345 n. 4 (9th Cir.1981). A client's right to the undivided loyalty of its attorney requires more than this. So, too, does the ethical obligations of the profession. Clients and the public will not repose confidence "in lawyers whom they distrust and will not trust law firms that switch sides [so] nimbly." *Ana-*

---

5. The record is unequivocal that Willian made no effort to terminate its attorney client relationship with Champion. In fact, the record shows that Mr. Barker was not surprised that the Champion business people took such a dras- tic position because "they did not know the background and facts of the matter," but Mr. Barker looked forward to a continuation of the Willian-Champion relationship after the Ransburg matter was resolved.

*lytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir.1983).

Because Champion was an existing client of Willian at the time the lawsuit was filed the actions of Willian must be reviewed under canon five which provides that: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." As stated by the Seventh Circuit in *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 229 (7th Cir.1978):

> The principle enunciated in this canon may require disqualification where a lawyer is concurrently representing adverse clients even if the subject matters of the representations are completely disjunct.

■ Of particular interest here is the disciplinary rules which emanate from canon five's general statement regarding professional conduct. The disciplinary rules are mandatory in character and represent the minimum level of conduct below which no lawyer should fall. Disciplinary Rule 5–105 addresses itself to the question of simultaneous representation of clients and provides, in relevant part, as follows:

> DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.
>
> (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would involve him in representing differing interests, except to the extent permitted under DR 5–105(C).
>
> (B) A lawyer shall not continue multiple employment if the exercise of this independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).
>
> (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

■ This Court concurs with the Third Circuit's interpretation of "adverse effect" as contained in 5–105(A) and (B). In *International Business Machines Corp. v. Levin*, 579 F.2d 271, 280 (3d Cir.1978) the court held that there is some adverse effect on an attorney's exercise of his independent judgment on behalf of a client when the attorney sues one client on behalf of another. This is so even if the the subject matter of the representations is unrelated.

Simply stated, it is unethical conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386–87 (2d Cir.1976) (adverse representation against a continuing client "is prima facie improper"). Therefore, the Court's attention must turn to whether Willian made full disclosure of the dual representation and obtained the consent of Champion as required by DR 5–105(C).

Mr. Todd, Champion's inside patent and trademark counsel, states in his affidavits that he was unaware that Ransburg was represented by Willian until January 7, 1986—the date prelitigation settlement negotiations ended and the complaint was filed. Mr. Todd further asserts that until January 7, 1986 all negotiations regarding the patent infringement had occurred between himself and Ransburg's general counsel Mr. Walton. Although Mr. Todd was aware that Ransburg's people were consulting "outside counsel" Mr. Todd was not informed of the identity of the outside counsel.

■ DR 5–105(C) "specifically imposes upon an attorney the burden of affirmatively providing disclosure and obtaining consent." *International Business Ma-*

*chines v. Levin, supra,* 579 F.2d at 281–82. Therefore, the burden of proving full disclosure and consent rests with Willian. In an attempt to meet this burden, Willian cites to three conversations that took place with Mr. Todd.

The first conversation occurred on April 12, 1985 at an "open house" reception sponsored by and at Willian's Toledo office for the purpose of promoting business at the new office. Over 100 guests were in attendance, most of whom were attorneys and clients. Mr. Willian and Champion's Mr. Todd were among those in attendance. Mr. Willian recalls having a conversation with Mr. Todd at this cocktail party in which it was made "clear" (to whom it is not known) that Ransburg was a client of the Willian firm and Champion would "step aside and seek other counsel" if a conflict arose between Champion and Ransburg. Mr. Todd recalls having a conversation with Mr. Willian that "could not have exceeded two minutes in length," but does not recollect any discussion whatsoever concerning Ransburg. In any event, it is important to note that this conversation took place nearly six months before Willian began its investigation of Champion on behalf of Ransburg.

The next conversation took place on December 9, 1985 and involved a telephone discussion between Champion's Mr. Todd and Ransburg's Mr. Walton. The two were making arrangements for the January 7, 1986 settlement conference. Mr. Todd concedes that he was told that Ransburg would be bringing outside counsel to this meeting but does not recall being informed that the outside counsel was Willian. Mr. Todd further states that had he received such information he would have recalled it because of the fact that Willian was performing work for Champion.[6]

The final conversation that Willian cites in support of the claimed full disclosure and consent is a "casual discussion" that took place between Willian's Mr. Ropski and Champion's Mr. Todd after the January 7, 1986 settlement conference adjourned. Mr. Todd does not deny having this conversation, but rather affirmatively asserts that this was the first that he knew Willian was representing the interests of Ransburg against those of Champion. Mr. Ropski notes in his affidavit that when they discussed the matter Mr. Todd did not affirmatively state that this arrangement was improper or objectionable.

■ It is doubtful that passing conversations at cocktail parties and in hallways is what the drafters of the ABA Code had in mind when they stated in DR 5–105(C) that "full disclosure" is required. Moreover, all of these conversations, and particularly the last one, gloss over the fact that in 1985 Willian was engaged in a pre-litigation investigation of Champion on behalf of another client, Ransburg, without disclosure and obtaining the express consent of Champion.

Willian's repeated assertions in their memoranda and affidavits that Mr. Todd and Champion "never *objected*" to Willian's concurrent representation of Ransburg is unpersuasive at best and disingenuous at worst. The affirmative duty here rests not with Mr. Todd and Champion, but with Willian and its attorneys. The standard is not did Champion or Mr. Todd object, but rather did they consent. It is clear from the record that they did not.

■ The Willian firm in its memoranda attempts to convert Champion's letter of withdraw to the Willian firm as a form of the necessary express consent to the concurrent representation of Ransburg and Champion. Mr. Todd in his January 14, 1986 letter requested that Willian withdraw from all Champion work except a few matters that were already in process. Willian interprets the instruction to complete the work in progress as express consent to concurrent representation. Such an argument ignores the reality of the situation and the practical nature of Mr. Todd's decision. Undoubtedly the decision to allow

---

6. Most interesting to the Court about this conversation is Willian's apparent reliance on outsiders to fulfill Willian's obligation of full disclosure and consent.

Willian to continue working on matters that were already underway was dictated by the economic considerations of moving the legal matters to another law firm.[7] Furthermore, the fact that Champion otherwise terminated their relationship with Willian shows that far from consenting to the concurrent representation, they objected in the strongest terms possible. Certainly the fact that more than one reading can be attributed to Mr. Todd's letter requires the Court to reject Willian's argument that it represents an expression of consent to the concurrent representation of Ransburg and Champion.[8]

■ Having found that Willian has breached its duty of loyalty to Champion it is unnecessary to discuss at length its violation of canon nine. Breaching the duty of loyalty to a client is prima facie improper and gives rise to an appearance of impropriety in the eyes of the public and the profession. As in *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1269 (7th Cir.1983) the appearance of impropriety created by Willian's activities "has meaning and weight." Willian's activities erode the public confidence in attorneys and diminishes the integrity of the profession and must not go unrectified.

■ Disqualification will not unduly taint the outcome of this case. The motion to disqualify was filed at a very early stage of this litigation. In fact, Champion has yet to answer the complaint. Albeit, the disqualification may work a hardship on Ransburg, but it cannot be said that this hardship outweighs the Court's duty to enforce the ethical obligations of the profes-

sion. *See Freeman v. Chicago Musical Instrument Co., supra,* 689 F.2d at 721. Moreover, the court believes the lack of substantial prejudice to Champion by allowing the continuation of Willian's representation of Ransburg is outweighed by the importance of maintaining the integrity of the profession. *International Business Machines v. Levin, supra,* 579 F.2d at 283.

Finally, Willian has attempted to characterize this motion for disqualification as vexatious and has sought to impugn the motives of Champion and its law firm, McDougall, Hersh and Scott. Whatever the nature of the motion and the motives of the parties, Willian's serious breach of the ethical obligations of the profession cannot be ignored. One's sympathy for Willian is tempered by the knowledge that this is a problem of their own creation and one which could easily have been avoided.

## CONCLUSION

For the foregoing reasons, the law firm of Willian Brinks Olds Hofer Gilson & Lione, Ltd. is disqualified from representing Ransburg in this litigation. Ransburg's motion to compel discovery pending the issuance of this decision is rendered moot.

---

**7.** In its memoranda Willian strenuously argues that Ransburg's choice of counsel must be preserved. A litigant's choice of counsel is a recognized and heavily weighted consideration in the disqualification formula. One wonders, however, what consideration Willian has given to Champion's choice of counsel. This is not to say that Willian may not represent whom they wish, but it does mean that they must make that decision before they begin pitting one client against another. Before reaching that juncture, the law firm must withdraw or seek the express consent of the clients after full disclosure.

**8.** The Court summarily rejects as unpersuasive Willian's submission of the announcement of the opening of the Toledo office and the firm's advertising brochure, both of which were mailed to Mr. Todd, for the purpose of showing that Champion knew in early 1985 that Willian represented Ransburg. Mr. Todd, like this Court, receives many of these mailings each month. Mr. Todd stated in his affidavit that he does not recall ever realizing there was a connection between Ransburg and Willian based upon these mailings. A reasonable, if not likely, scenario.