CINEMA 5, LTD., Plaintiff-Appellant,

v.

CINERAMA, INC., et al.,
Defendants-Appellees.

No. 105, Docket 75–7185.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1975.

Decided Jan. 27, 1976.

Donald J. Cohn, New York City (Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, James V. Kearney, New York City, on the brief), for plaintiff-appellant.

Janet P. Kane, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Simon Rose, David G. Richenthal, New York City, on the brief), for defendants-appellees.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This appeal from an order granting defendants' motion to disqualify plaintiff's counsel presents a somewhat unusual set of facts. Counsel has been disqualified from further representation of plaintiff because a partner in this New York City law firm is also a partner in a Buffalo firm which is presently representing the defendant Cinerama, Inc. in other litigation of a somewhat similar nature. Although we agree with the district court that there was no actual wrongdoing and intend no criticism of the lawyers involved, we find no abuse of the district court's discretion, *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975), and so affirm.

There is little or no dispute as to the facts, most of them having been stipulated. Attorney Manly Fleischmann is a partner in Jaeckle, Fleischmann and Mugel of Buffalo and in Webster, Sheffield, Fleischmann, Hitchcock and Brookfield of New York City. He divides his time between the two offices. Cinerama is a distributor of motion pictures and the operator of several large theater chains. In January 1972 the Jaeckle firm was retained to represent Cinerama and several other defendants in an action brought in the United States District Court for the Western District of New York. Plaintiffs in that suit are local upstate theater operators who allege anti-trust violations resulting from discriminatory and monopolistic licensing and distribution of motion pictures in the Rochester area. A similar action involving allegedly illegal distribution in the Buffalo area was commenced in March 1974, and the Jaeckle office represents the interests of Cinerama in this action also. Both suits are presently pending in the Western District.

The instant action, brought in the Southern District of New York in August 1974, alleges a conspiracy among the defendants to acquire control of plaintiff corporation through stock acquisitions, with the intention of creating a monopoly and restraining competition in New York City's first-run motion picture theater market. Judge Brieant found that there was sufficient relationship between the two law firms and the two controversies to inhibit future confidential communications between Cinerama and its attorneys and that disqualification was required to avoid even the appearance of professional impropriety, citing as authority our decision in *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974).

Appellant's counsel strongly dispute these findings. They say that they should not be disqualified unless the relationship between the controversies is substantial, and they contend there is nothing substantial in the relationship between an upstate New York conspiracy to deprive local theater operators of access to films and an attempted corporate take-over in New York City.

██ The "substantial relationship" test is indeed the one that we have customarily applied in determining whether a lawyer may accept employment against a former client. *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1291 (2d Cir. 1975); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir. 1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973). However, in this case, suit is not against a former client, but an existing one. One firm in which attorney Fleischmann is a partner is suing an actively represented client of another firm in which attorney Fleischmann is a partner. The propriety of this conduct must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.

██ A lawyer's duty to his client is that of a fiduciary or trustee. *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir. 1974); *Spector v. Mermelstein*, 361 F.Supp. 30, 38 (S.D.N.Y.1972), *modified on other grnds.*, 485 F.2d 474 (2d Cir. 1973); Wise, *Legal Ethics* 256 (2d ed.). When Cinerama retained Mr. Fleischmann as its attorney in the Western District litigation, it was entitled to feel that at least until that litigation was at an end, it had his undivided loyalty as its advocate and champion, *Grievance Committee v. Rottner*, 152 Conn. 59, 65, 203 A.2d 82 (1964), and could rely upon his "undivided allegiance and faithful, devoted service." *Von Moltke v. Gillies*, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). Because "no man can serve two masters", Matthew 6:24; *In re W. T. Byrns, Inc.*, 260 F.Supp. 442, 445 (E.D.Va.1966); *Woods v. City Nat'l Bank and Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941), it had the right to expect also that he would "accept no retainer to do anything that might be adverse to his client's interests." *Loew v. Gillespie*, 90 Misc. 616, 619, 153 N.Y.S. 830, 832 (1915), *aff'd*, 173 App.Div. 889, 157 N.Y.S. 1133 (1st Dep't 1916). Needless to say, when Mr. Fleischmann and his New York City partners undertook to represent Cinema 5, Ltd., they owed it the same fiduciary duty of undivided loyalty and allegiance.

██ Ethical Considerations 5–1 and 5–14 of the American Bar Association's Code of Professional Responsibility provide that the professional judgment of a lawyer must be exercised solely for the benefit of his client, free of compromising influences and loyalties, and this precludes his acceptance of employment that will adversely affect his judgment or dilute his loyalty. The Code has been adopted by the New York State Bar Association, and its canons are recognized by both Federal and State Courts as appropriate guidelines for the professional conduct of New York lawyers. *Hull v. Celanese Corp., supra*, 513 F.2d at 571 n. 12.

██ Under the Code, the lawyer who would sue his own client, asserting in justification the lack of "substantial relationship" between the litigation and the work he has undertaken to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned. This appears to be the opinion of the foremost writers in the field, *see* Wise, *supra*, at 272; Drinker, *Legal Ethics* 112, 116, and it is the holding of the New York courts. In *Matter of Kelly*, 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968), New York's highest court said that "with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship." Nor is New York alone in this view. In *Grievance Committee v. Rottner, supra*, 152 Conn. at 65, 203 A.2d 82, Connecticut's highest court held that the maintenance of public confidence in the bar requires an attorney to decline employment adverse to his client, even though the nature of such employment is

wholly unrelated to that of his existing representation.

▮▮▮ Whether such adverse representation, without more, requires disqualification in every case, is a matter we need not now decide. We do hold, however, that the "substantial relationship" test does not set a sufficiently high standard by which the necessity for disqualification should be determined. That test may properly be applied only where the representation of a former client has been terminated and the parameters of such relationship have been fixed. Where the relationship is a continuing one, adverse representation is prima facie improper, *Matter of Kelly, supra,* 23 N.Y.2d at 376, and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation. We think that appellants have failed to meet this heavy burden and that, so long as Mr. Fleischmann and his Buffalo partners continue to represent Cinerama, he and his New York City partners should not represent Cinema 5, Ltd. in this litigation.

Because he is a partner in the Jaeckle firm, Mr. Fleischmann owes the duty of undivided loyalty to that firm's client, Cinerama. Because he is a partner in the Webster firm, he owes the same duty to Cinema 5, Ltd. It can hardly be disputed that there is at least the appearance of impropriety where half his time is spent with partners who are defending Cinerama in multi-million dollar litigation, while the other half is spent with partners who are suing Cinerama in a lawsuit of equal substance.[1]

Because "an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests," *Edelman v. Levy,* 42 App.Div.2d 758, 346 N.Y.S.2d 347 (2d Dept.1973) (mem.), this requires his disqualification. *Hull v. Celanese Corp., supra,* 513 F.2d at 571; *General Motors v. City of New York, supra,* 501 F.2d at 649; *W. E. Bassett Co. v. H. C. Cook Co.,* 201 F.Supp. 821, 825 (D.Conn.), *aff'd,* 302 F.2d 268 (2d Cir. 1962) (per curiam). Moreover, because of the peculiarly close relationship existing among legal partners, if Mr. Fleischmann is disqualified, his partners at the Webster firm are disqualified as well. *Laskey Bros., Inc. v. Warner Bros. Pictures, Inc.,* 224 F.2d 824, 826 (2d Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 819 (1956); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128 (5th Cir. 1971); *Estep v. Johnson,* 383 F.Supp. 1323, 1325 (D.Conn.1974).

Nothing that we have heretofore said is intended as criticism of the character and professional integrity of Mr. Fleischmann and his partners. We are convinced that the dual representation came about inadvertently and unknowingly, and we are in complete accord with Judge Brieant's finding that there has been no actual wrongdoing. Furthermore, the record shows that after learning of the conflict which had developed, the Jaeckle firm, through Mr. Fleischmann, offered to withdraw its representation of Cinerama in the Western District actions. However, that offer was not accepted, and Mr. Fleischmann continued, albeit reluctantly, to have one foot in each camp.

Under the circumstances, Judge Brieant's order of disqualification cannot be construed as an abuse of his discretion. We therefore affirm.

---

1. Mr. Fleischmann's personal participation in the Buffalo litigation was minimal, and we are confident that he would make every effort to disassociate himself from both lawsuits and would not divulge any information that came to him concerning either. However, we cannot impart this same confidence to the public by court order.