Guido SAPIENZA, by his parent, Basil Sapienza, David Fong, by his parent, Shew T. Fong, Individually and on behalf of all other newspaper carrier boys and girls who are similarly situated; Martin Cohen d/b/a Teenage Deliveries, Plaintiffs,

v.

NEW YORK NEWS, INC., Gaynor News Co., Chicago Tribune, Leonard Cohen, News Home Delivery, Inc., Defendants.

79 Civ. 5268 (GLG).

United States District Court,
S. D. New York.

Dec. 17, 1979.

---

Tarnow & Landsman, P. C., New York City, for plaintiffs by Herman H. Tarnow, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendant, New York News, Inc. by Frederick T. Davis, Ann R. Loeb, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

Defendant New York News, Inc. ("the News") seeks to have the plaintiffs' counsel, Herman Tarnow ("Tarnow"), and Tarnow's firm, Tarnow & Landsman, P. C., disqualified because of Tarnow's continuing association with and representation of defendant Leonard Cohen, News Home Delivery, Inc. ("Leonard Cohen"). The principal defendants in the action, which is an antitrust suit, are the News, the publisher of the *Daily News* and the *Sunday News,* and Leonard Cohen, a distributor for the News. The plaintiffs are Guido Sapienza and David Fong, newsboys who deliver the *Daily News* and the *Sunday News* to subscribers for Leonard Cohen, and Martin Cohen, who is Leonard Cohen's son and who distributes the *New York Times* under a trade

style of "Teenage Deliveries," using Leonard Cohen's facilities and deliverers.[1]

Tarnow represented Leonard Cohen over the course of several months in a dispute over Leonard Cohen's old distribution contract with the News; threatened litigation against the News on behalf of Leonard Cohen; negotiated Leonard Cohen's new distribution contract with the News, which was signed on September 16, 1979; and continued to represent Leonard Cohen in its dealings with the News through November 1979. In addition, in October 1979, Tarnow filed a complaint in New York State Supreme Court, Bronx County, on behalf of Leonard Cohen against the News; although that complaint is based on the News's alleged contract violations, it concerns the same events and essentially the same issues as the antitrust suit now before this Court.

Meanwhile, Tarnow is representing the plaintiffs in this federal antitrust suit, filed on October 3, 1979, against Leonard Cohen and other defendants. As to this action, Leonard Cohen has not retained other counsel, and Tarnow apparently expects to represent him. (Memorandum in Opposition of [sic] Defendants' Motion for Disqualification of an Attorney at 8.) Tarnow seems to believe that he can adequately represent the interests of both defendant Leonard Cohen and plaintiffs Martin Cohen and the newsboys. (Id. at 8–9.) It is apparent to the Court, however, that Tarnow's representation of the plaintiffs violates at least Canon 5 [2] of the American Bar Association's Code of Professional Responsibility ("Code") and the Ethical Considerations and Disciplinary Rules promulgated thereunder.[3]

1. Plaintiffs allege that the defendants violated the antitrust laws by agreeing that neither Leonard Cohen nor the newsboys would deliver newspapers other than the *Daily News* and the *Sunday News* within a certain territory. For the Court's decision on the plaintiffs' motion for a preliminary injunction and for a brief discussion of the antitrust claims, see *Sapienza v. New York News, Inc.*, 481 F.Supp. 671 (S.D.N.Y.1979).

2. Canon 5 provides: "A lawyer should exercise independent professional judgment on behalf of a client."

   The Code of Professional Responsibility, as promulgated by the American Bar Association in August 1969, was adopted by the New York State Bar Association, effective January 1, 1970, with certain amendments. The Canons, Ethical Considerations, and Disciplinary Rules quoted and referred to in this opinion are as adopted in New York.

3. Of particular relevance are Ethical Consideration 5–15 and Disciplinary Rule 5–105.

   Ethical Consideration 5–15 provides:
   If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the inter-

ests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. . . .

   Disciplinary Rule 5–105 provides:
   *Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.*

   (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests except to the extent permitted under DR 5–105(C).
   (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).
   (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
   (D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

The Code has been recognized as a principal source of guidance for the courts on professional responsibility. *E. g., Armstrong v. McAlpin*, 606 F.2d 28, 30 (2d Cir. 1979); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976). In conjunction with Canon 5's general requirement of "independent professional judgment," *see* note 2 *supra*, the Code notes the problems of impairment of judgment and divided loyalty when a lawyer represents "multiple clients having potentially differing interests." Ethical Consideration 5–15, *quoted at* note 3 *supra*. The Code specifically counsels the lawyer to "resolve all doubts against the propriety of the representation" and states that the "lawyer should never represent in litigation multiple clients with differing interests." *Id.* The Code further states that a lawyer "shall decline proffered employment" and "shall not continue multiple employment . . . if it would be likely to involve him in representing differing interests." Disciplinary Rule 5–105(A), (B), *quoted at* note 3 *supra*. An exception is made only "if it is obvious that [the lawyer] can adequately represent the interest of each [client] and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Disciplinary Rule 5–105(C), *quoted at* note 3 *supra*. Since the plaintiffs and defendant Leonard Cohen in this case seem to have actually differing interests rather than merely potentially differing interests (at least as pictured in the complaint), and since the parties are already in litigation, Tarnow's representation of the plaintiffs seems to fall squarely within the area of prohibited conduct.

Case law similarly supports the disqualification of counsel in this case. The United States Court of Appeals for the Second Circuit has held that where the lawyer, like Tarnow in this case, has a continuing relationship with one client and then accepts employment from another client with differing interests, the "adverse representation is prima facie improper." *Cinema 5, Ltd. v. Cinerama, Inc., supra*, 528 F.2d at 1387. *See Kelly v. Greason*, 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 944, 244 N.E.2d 456, 461 (1968); *Jedwabny v. Philadelphia Transportation Co.*, 390 Pa. 231, 135 A.2d 252, 254 (1957) ("No one could conscionably contend that the same attorney may represent both the plaintiff and defendant in an adversary action. . . . Obviously, the attorney cannot serve the opposed interests of his two clients fully and faithfully. The ancient rule against one's attempting to serve two masters interposes."). Moreover, disqualification of counsel has been ordered even when the conflict of interest concerns a former client rather than a current client.[4] *E. g., Government of India v. Cook Industries, Inc.*, 422 F.Supp. 1057 (S.D.N.Y.1976), *aff'd*, 569 F.2d 737 (2d Cir. 1978); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953).

In defense of his representation of the plaintiffs in this case, Tarnow asserts that the interests of the plaintiffs are not adverse to those of Leonard Cohen and thus that there is no conflict of interest. He also

---

**4.** Courts have often found disqualification unwarranted in cases in which the party moving for disqualification—like the News in this case—was not the party likely to be harmed by the adverse representation. *See Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir. 1979) (defendant sought to disqualify plaintiff's counsel, whose firm had represented competitors of plaintiff); *Baglini v. Pullman, Inc.*, 412 F.Supp. 1060 (E.D.Pa.), *aff'd*, 547 F.2d 1158, 1160, 1161, 1163 (3d Cir. 1976) (defendant sought to disqualify plaintiffs' attorney, who had previously represented a third party defendant); *Murchison v. Kirby*, 201 F.Supp. 122 (S.D.N.Y.1961) (defendant sought to dis- qualify his law partner, not his lawyer, from acting as counsel for plaintiffs). *Contra, Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.*, 345 F.Supp. 93, 98 (S.D.N.Y.1972) ("What is involved is a matter of public interest involving the integrity of the Bar. When the propriety of professional conduct is questioned, any member of the Bar who is aware of the facts which give rise to the issue is duty bound to present the matter to the proper forum . . . .." (footnote omitted)). None of these cases, however, involved anything approaching the situation in the case at bar, namely, the same lawyer representing two clients directly opposing each other in litigation.

asserts that all the plaintiffs and Leonard Cohen have consented to his serving as counsel, thus satisfying Disciplinary Rule 5–105(C).

It is possible that the plaintiffs' interests are not adverse to those of Leonard Cohen. If that were so, realignment of Leonard Cohen as a plaintiff might be a more appropriate remedy than disqualification of counsel. It is clear from Tarnow's own admission (Affidavit at 3–4), however, that the situation of which the plaintiffs complain— the inability of Martin Cohen to use Leonard Cohen's facilities and of the newsboys to deliver papers other than the *Daily News* and the *Sunday News*—results directly from Leonard Cohen's action in signing a new contract with the News excluding such use of Leonard Cohen's facilities and joint delivery of newspapers. Thus, if Leonard Cohen were realigned as a plaintiff, the plaintiffs' antitrust claim and this Court's federal question jurisdiction would both disappear.[5] Moreover, if the plaintiffs' interests and those of Leonard Cohen are the same, then the action between those parties appears to be collusive.

Even if their *ultimate* objectives are the same, however, it is difficult to see how Leonard Cohen's interests could be other than adverse to those of the putative plaintiffs *in this litigation*, since the plaintiffs are directly suing Leonard Cohen and the News for treble damages for alleged antitrust violations. This is not a situation of mere technical adverseness; the plaintiffs and Leonard Cohen are directly opposed to each other as to the antitrust claims stated in this suit. Moreover, even if the interests of these parties were not adverse, the appearance of representing conflicting interests would be enough to warrant disqualification. *See Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1387; Canon 9.[6]

Tarnow's second argument—that all his clients have consented to his representation of the plaintiffs—is insufficient[7] to remove Tarnow's conduct from the prohibitions of Disciplinary Rule 5–105. The Code's exception to the general prohibitions against representing multiple clients with differing interests requires not only that the parties consent, but also that it be "obvious" that the lawyer can adequately represent the interests of each client. Disciplinary Rule 5–105(C), *quoted at* note 3 *supra*. *See Rice v. Baron,* 456 F.Supp. 1361, 1376 (S.D.N.Y.1978); *Kelly v. Greason, supra,* 23 N.Y.2d at 378, 296 N.Y.S.2d at 945–46, 244 N.E.2d at 461–62. It is far from obvious that Tarnow could adequately represent both Leonard Cohen and the plaintiffs if a true adversarial claim exists. In fact, the opposite seems obvious. In addition to concern about adequate representation of the clients, concern about the "confidence and respect of the community towards its bench and bar" supports disqualification of counsel in some cases, even where the parties have consented to the multiple representation. *Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.,* 345 F.Supp. 93, 98–99 (S.D.N.Y.1972). This case involves circumstances particularly likely to undermine such confidence and respect of the community.

An additional difficulty with Tarnow's representation of the plaintiffs in this litigation is suggested by the Code's requirement that a lawyer withdraw as counsel if "it is obvious that he . . . ought to be called as a witness on behalf of his client."[8]

---

**5.** *See* note 1 *supra.*

**6.** Canon 9 provides: "A lawyer should avoid even the appearance of professional impropriety." · ·

**7.** If this suit is collusive, as it appears to be between certain of the purported adversaries, Tarnow's multiple clients would, of course, consent to his representation. Thus, in such a case, consent of all clients seems less relevant than it would be under other circumstances.

**8.** Disciplinary Rule 5–102, which provides:
   *Withdrawal as Counsel When the Lawyer Becomes a Witness.*
   (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may

Since Tarnow negotiated the contract between Leonard Cohen and the News on which much of the plaintiffs' case is based, he probably would be called as a witness in a trial of the case.

Still another problem is suggested by Canon 4's admonition: "A lawyer should preserve the confidences and secrets of a client." Tarnow's intimate association with defendant Leonard Cohen creates the danger of disclosure—either deliberate or inadvertent—of Leonard Cohen's confidences and secrets to the plaintiffs in this case.

■ Finally, if Tarnow is disqualified as counsel for the plaintiffs, his firm, Tarnow & Landsman, P. C., must also be disqualified, because of the "peculiarly close relationship existing among legal partners." *See Cinema 5, Ltd. v. Cinerama, Inc., supra,* 528 F.2d at 1387; Disciplinary Rule 5–105(D), *quoted at* note 3 *supra.*

For the reasons stated, it is evident that Tarnow cannot continue in his present capacity as counsel for the plaintiffs and as counsel for defendant Leonard Cohen. Accordingly, the motion to disqualify Tarnow and his firm as counsel for the plaintiffs is granted. The plaintiffs are directed to designate substituted counsel within thirty days of the date of this decision.

So ordered.

testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.