**UNITED STATES of America, Plaintiff,**

v.

**NABISCO, INC., and Sag Harbor Industries, Inc., Defendants.**

**No. CV–86–3277(CPS).**

United States District Court, E.D. New York.

May 6, 1987.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. by: Kiyo Matsumoto, Asst. U.S. Atty., for plaintiff.

Burton H. Brody, New York City, for Nabisco, Inc.

Rivkin, Radler, Dunne & Bayh by Frank L. Amoroso, Uniondale, N.Y., for Sag Harbor Industries, Inc.

## REPORT AND RECOMMENDATION

JOHN L. CADEN, United States Magistrate.

### INTRODUCTION

This is an action to recover the costs of a "response action" undertaken by the Environmental Protection Agency ("EPA") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* Sag Harbor Industries, Inc. ("Sag Harbor") is named as a defendant due to its present ownership of property alleged to be a source of groundwater contamination. Nabisco, Inc. ("Nabisco") is named as a defendant because its alleged subsidiary, Rowe Industries Inc. ("Rowe Industries"), previously owned and operated the site. Nabisco and Sag Harbor have cross-claimed against each other for indemnification and contribution.

This case was referred to the undersigned on January 28, 1987 by the Honorable Charles P. Sifton. On February 4, 1987 Nabisco[1] moved for an order disqualifying the law firm of Rivkin, Radler, Dunne and Bayh ("RRD & B") from further representation of Sag Harbor in this action. Nabisco has also requested the court to enjoin RRD & B from communicating any information or knowledge derived as a result of its alleged representation of Nabisco. Oral argument was heard on this motion on March 5, 1987.

Nabisco alleges that RRD & B's representation of Sag Harbor in this action violates Canons 4, 5 and 9 of the New York State Bar Association's Code of Professional Responsibility in addition to certain Disciplinary Rules and Ethical Considerations promulgated thereunder. Each of Nabisco's challenges stems from RRD & B's representation of Standard Brands Incorporated ("Standard Brands") which merged into Nabisco on December 31, 1982. The factual background of this motion is set forth below.

### BACKGROUND

I. *The Attorney-Client Relationship Between RRD & B and Standard Brands*

Warren Radler, the managing partner of RRD & B's Chicago office, first represented Standard Brands in 1979 at the request of Burton H. Brody, then litigation counsel to Standard Brands. At the time, Radler was a member of the Chicago law firm of Reuben and Proctor. In this capacity, Radler undertook the representation of Standard Brands in five separate actions between 1979 and 1981.

Two of these five cases settled in 1979, each within one month of its commencement. In the first action, *Standard Brands Incorporated v. Trankira and Trana Enterprises,* Standard Brands sought to enjoin Trana, a fulfillment house, from keeping Standard Brands' premium requests in its safe deposit box. The second case to settle, *Gonzalez v. Standard Brands Incorporated,* involved a claim for an alleged breach of contract to make disability payments for maternity leave.

On September 1, 1981, Radler merged Reuben and Proctor into the law firm of Rivkin, Leff, Sherman & Radler, the predecessor to RRD & B. Rivkin, Leff, and ultimately RRD & B, took over the representation of Standard Brands in the three cases that were still active from the original group of five actions that had been assigned to Radler at Reuben and Proctor.

In one of these cases, *National Wrecking v. Standard Brands Incorporated,* RRD & B defended Standard Brands in an action for payment for the procurement of demolition permits in Chicago. This case settled in 1984. Another of these cases, *Lowe v. Standard Brands Incorporated,* was successfully tried by RRD & B in May 1985. In *Lowe,* RRD & B defended the Curtiss Candy Division of Standard Brands against a claim for breach of an employ-

---

**1.** The motion papers submitted to the court identified Nabisco Brands, Incorporated as the movant. Nabisco Brands, Incorporated is Nabisco's parent corporation and not a party to this case. At oral argument, counsel fo Nabisco explained to the court that this was a typographical error and that the instant motion has been brought by defendant Nabisco.

ment contract. The last of these cases, *Standard Brands Incorporated v. Coen,* is pending in Circuit Court, Cook County, Illinois. *Coen* is a negligence and products liability action arising from the explosion of a boiler at Standard Brands' bakery in Chicago.

The five actions outlined above ("the Standard Brands actions") constitute the only matters in which either Radler or RRD & B has represented the interests of Standard Brands. Further, RRD & B has never been employed to represent the interests of Nabisco or its parent company, Nabisco Brands Incorporated ("Nabisco Brands"). Nabisco's claim that it has been, and is presently, a client of RRD & B is premised upon the fact that RRD & B continued to litigate pending cases on behalf of Standard Brands after Standard Brands merged into Nabisco.

Pursuant to the laws of New Jersey and Delaware, the respective states of incorporation of Nabisco and Standard Brands, Standard Brands ceased to exist as a corporate entity when it merged into Nabisco on December 31, 1982.[2] Nabisco survived the merger and succeeded to all of the rights, liabilities and obligations of Standard Brands. Thus, as a matter of law, Nabisco became the real party in interest in the ongoing actions in which RRD & B was counsel of record to Standard Brands; specifically *National Wrecking, Gonzalez,* and *Coen.* By virtue of this fact, Nabisco claims that it succeeded to the attorney-client relationship between RRD & B and Standard Brands.

Nabisco contends that in representing Sag Harbor, and cross-claiming against Nabisco, RRD & B has brought suit against its own client in violation of Canons 4, 5, and 9. Further, Nabisco claims that to the extent its liability in the instant case may

turn upon its relationship to Rowe Industries, RRD & B's alleged familiarity with the corporate structure of Nabisco, its subsidiaries, and its affiliates, may be prejudicial to Nabisco's efforts to defend itself. In this regard, Nabisco urges the court that it need not establish actual prejudice since it is entitled to freedom from the apprehension that RRD & B may utilize, on behalf of Sag Harbor, information RRD & B acquired through its representation of Standard Brands.

RRD & B claims that it has never represented the interests of Nabisco. RRD & B contends that subsequent to the merger between Standard Brands and Nabisco, RRD & B litigated the Standard Brands cases on behalf of Nabisco Brands not Nabisco, the defendant in the instant case. As previously mentioned, Nabisco Brands is Nabisco's parent corporation and it stood in that relationship to Standard Brands until Standard Brands merged into Nabisco. In the alternative, RRD & B appears to argue that even if Nabisco is deemed to have become its client by virtue of the merger, the attenuated relationship between RRD & B and Nabisco, and the dissimilarity between the subject matter of the instant case and the Standard Brands cases do not warrant RRD & B's disqualification under the "substantial relationship" analysis that it urges the court to apply in the instant case.

### DISCUSSION

■ At the outset, the undersigned rejects RRD & B's claim that its post merger efforts, in the name of Standard Brands, were undertaken on behalf of Nabisco Brands, rather than defendant Nabisco. Under the laws governing the merger of the two corporations, it is clear that Nabis-

---

2. In July 1981, Standard Brands combined with Nabisco in a stock transaction through which both corporations became operating subsidiaries of Nabisco Brands Inc., a newly formed holding company.

As a result of this combination, Standard Brands and Nabisco became "sister corporations," each continuing to operate its respective business enterprise as a subsidiary of Nabisco Brands.

It was this relationship between the two corporations that was brought to the court's attention in the original submissions of the parties to this motion. At the hearing held by the undersigned, the court was first informed that Standard Brands had merged into Nabisco on December 31, 1982.

co succeeded to all of the rights and privileges possessed by Standard Brands. Similarly, as a result of the merger, Nabisco became liable for all of the obligations and penalties owed by Standard Brands. Thus, it is obvious that Nabisco, not Nabisco Brands, became the real party in interest, and RRD & B's client, in the Standard Brands cases pending after the merger.

Contrary to RRD & B's claim, the fact that correspondence, including bills and receipts, pertinent to these actions was sent to the attention of Burton H. Brody at the offices of Nabisco Brands is not sufficient to establish that Nabisco Brands, rather than Nabisco, stepped into the shoes of Standard Brands after the merger. Since Burton H. Brody is, or has been, counsel to Standard Brands, Nabisco, and Nabisco Brands, his receipt of correspondence related to the Standard Brands cases at the offices of Nabisco Brands is of little significance.

■ Further, Nabisco Brands cannot be deemed the successor to the attorney-client relationship between RRD & B and Standard Brands, as RRD & B claims, merely because Nabisco Brands, a holding company, held the stock of Standard Brands prior to the merger. RRD & B has failed to cite a single case in support of this proposition and it directly contravenes the laws that governed the merger. As previously noted, the certificates of merger filed by both Nabisco and Standard Brands designate Nabisco, not Nabisco Brands, as the successor to the rights and liabilities of Standard Brands. Although it is beyond dispute that the attorney-client relationship between RRD & B and Nabisco did not arise in a conventional manner, it is equally apparent that the merits of this motion must be determined with reference to the relationship between these two entities. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318–20 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).

Having concluded that the rights and liabilities accruing to Standard Brands after the merger must be attributed to Nabisco, and that Nabisco is a client of RRD & B, the next step is to determine the appropriate standard against which to evaluate the alleged conflict created by RRD & B's representation of Sag Harbor. This evaluation must take into account the fact that RRD & B continues to represent Nabisco's interests in the *Coen* case.

As a general rule, courts within the Second Circuit have ordered disqualification in two types of cases:

(1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage.

*Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979) (citations and footnotes omitted). Because conduct falling into either of these categories tends to "taint the trial," disqualification is warranted. *Nyquist*, 590 F.2d at 1246.

■ Two distinct rules have been utilized in this Circuit to determine the merits of a motion to disqualify a party's chosen counsel. Generally, in cases where the movant establishes that a law firm is simultaneously employed by two or more adverse parties in the same action, such representation is deemed *"prima facie* improper." To rebut this characterization, the law firm that is the target of the motion must establish that: (1) its clients have consented to the adverse representation or (2) "at the very least, ... there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of [its] representation." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir.1976).

This heavy burden is justified because the propriety of such conduct is measured "not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Cinema 5*, 528 F.2d at 1386. This duty of allegiance is fiduciary in na-

ture and is rooted in the premise that "no man can serve two masters." Matthew 6:24, *In Re Kelly*, 23 N.Y.2d 368, 376, 244 N.E.2d 456, 296 N.Y.S.2d 937 (1968).

The Second Circuit has left unanswered the question of whether adverse representation, without more, warrants disqualification in every case. *Cinema 5*, 528 F.2d at 1387. However, neither the parties, nor the undersigned, has located a case wherein counsel opposing a disqualification motion premised upon adverse representation has successfully established the absence of an apparent conflict. *Cf. Guthrie Aircraft, Inc. v. Genesee County*, 597 F.Supp. 1097, 1099 (W.D.N.Y.1984) (attorneys in traditional attorney-client relationship with adverse parties to law suit could not meet burden imposed by *Cinema 5*). Rather than dilute the strength of this strict prophylactic rule, the Second Circuit has limited its applicability by utilizing the less stringent "substantial relationship test" under circumstances where it found the attorney-client relationship to be attenuated or vicarious. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981).

■ The "substantial relationship test" was developed in response to Canon 4's admonition that an attorney must not disclose the confidences of his client. It is most often applied in cases where a lawyer seeks to represent a client with interests adverse to those of a former client. *See NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 132 (2d Cir.1976); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir.1973); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953). Under such circumstances, "the former client [must] show no more than that the matters embraced within the pending suit wherein his former attorney appears ... are substantially related to the matters or cause of action where the attorney previously represented him, the former client." *T.C. Theatre Corp.*, 113 F.Supp. at 268–69. The purpose of this rule is "to prevent any possibility, however slight, that confidential information acquired from a client during a

previous relationship may subsequently be used to the client's disadvantage." *Emle*, 478 F.2d at 571.

In *Glueck v. Jonathan Logan, Inc.*, *supra*, the Second Circuit enlarged the parameters of the "substantial relationship test." The court used it to determine whether a law firm that represents an incorporated trade association could represent a client in an action against a corporation, a division of which is a member of the trade association. Focusing upon the attenuated and vicarious nature of the relationship between the law firm and the corporate defendant, the court used the "substantial relationship" test to determine whether the strict standard promulgated pursuant to Canon 5 should be applied. *Glueck*, 653 F.2d at 749–750. In affirming the district court's order of disqualification, the court held that "disqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which a firm represents an association as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant". *Glueck*, 653 F.2d at 749.

Nabisco never employed RRD & B directly. However, it contends that the "substantial relationship test" is not applicable to this case. Nabisco argues that the strict test utilized in adverse representation cases is the appropriate standard because Nabisco succeeded to the ongoing attorney-client relationship between RRD & B and Standard Brands. Accordingly, Nabisco claims that it is *prima facie* improper for RRD & B to cross-claim against Nabisco while simultaneously representing Nabisco's interests in *Standards Brands Incorporated v. Coen*. Further, Nabisco claims that such simultaneous representation creates an appearance of professional impropriety in violation of Canon 9.

RRD & B vigorously opposes application of the *Cinema 5* test. Urging the court to find that the hybrid relationship between itself and Nabisco is analogous to the vicarious and attenutated attorney-client relationship identified in *Glueck*, RRD & B

argues that the merits of this motion should be evaluated under the "substantial relationship test."

██ In support of their diametrically opposed characterizations of the relationship between Nabisco and RRD & B, the parties cite cases only tangentially relevant to the issues in this case. The fact that a surviving corporation has standing to assert the attorney-client privilege as to documents of the merged corporation is not dispositive on the issue of succession to the attorney-client relationship. *See O'Leary v. Purcell Co.*, 108 F.R.D. 641, 644 (M.D.N.C.1985). Further, in light of RRD & B's ongoing involvement in the *Coen* case, RRD & B cannot fairly characterize Nabisco as a mere assignee of assets moving to disqualify a law firm that previously represented the assignor. *See SMI Industries Canada Ltd. v. Caelter Industries*, 586 F.Supp. 808, 815 (N.D.N.Y.1984). Instead, selection of the appropriate standard to be applied in the instant case should depend upon whether the attorney-client relationship between Nabisco and RRD & B is more fairly characterized as vicarious and attenuated than traditional in nature.

██ When Standard Brands merged into Nabisco in 1982, it became the real party in interest in the *Coen* case. Clearly, any liability incurred by Nabisco at the conclusion of that action would arise on account of its relationship to Standard Brands. However, neither the existence of vicarious liability nor the dissimilarities between the *Coen* case and the instant EPA action persuade the court that the relationship between Nabisco and RRD & B is sufficiently attenuated to warrant application of the "substantial relationship test" to the facts in this case.

A comparison of the nexus between the parties to this motion and the relationship between the law firm and the "vicarious client" referred to in the *Glueck* case supports this conclusion. *See Glueck*, 653 F.2d at 748.

In *Glueck, supra,* the law firm subject to the disqualification motion represented both an incorporated trade association comprised of more than 100 members and an individual who had brought an action against a corporation, a division of which was a member of the association. There, the association was the client. The corporate defendants had no relationship to the law firm independent of its division's membership in the association.

In the instant case, there is no intermediary entity juxtaposed between Nabisco and RRD & B. At this point in time, Standard Brands is merely a spectre, and as such, too insubstantial to render vicarious the relationship between Nabisco and RRD & B. Further, in the *Coen* litigation, RRD & B represents only the interests of Nabisco whereas the law firm in the *Glueck* case was charged with the representation of each of the 100 corporate members that comprised the ranks of the association.

As a result of RRD & B's representation of both Sag Harbor and Nabisco, Burton Brody and his staff at Nabisco will be simultaneously cooperating with RRD & B in the *Coen* case and opposing RRD & B in the EPA action. Although RRD & B owes its undivided loyalty to Nabisco, rather than its employees, the court believes that the cumulative weight of each of these factors, and the direct, adverse positions of Sag Harbor and Nabisco in the instant case creates a risk of dimunition in the vigor of RRD & B's representation of Nabisco. Accordingly, RRD & B must carry a heavy burden and establish, at the very least, the absence of either an actual or apparent conflict in loyalties. *Cinema 5*, 528 F.2d at 1387.

In all of its submissions, RRD & B has not squarely addressed this issue. However, even considering the facts proferred by the law firm to demonstrate the distance between itself and Nabisco, the court finds an apparent conflict to exist in this case.

Under the circumstances, the fact that Nabisco is represented by RRD & B's Chicago office while Sag Harbor is currently represented by RRD & B's New York office is of little consequence. *See Cinema 5*, 528 F.2d at 1387. Further, it is beyond dispute that this separation of labor was

not a factor from the outset since an associate from RRDB's Chicago office appeared on behalf of Sag Harbor to discuss the groundwater problem with representatives of the EPA, Burton H. Brody, and Susan Angele, Assistant Litigation Counsel at Nabisco. Although this meeting took place before the United States commenced the instant action, the participation of the Chicago associate illustrates the point that RRD & B must be deemed a single entity.

Similarly, the apparent conflict is not abrogated by the dissimilarities between the subject matter of the instant action and the *Coen* case. *Cinema 5*, 528 F.2d at 1386; *International Business Machines Corp. v. Levin*, 579 F.2d 271, 280 (3d Cir.1978).

In *International Business Machines Corp.*, the court noted that the adverse effects of multiple representation may take many forms. 579 F.2d at 280. Chief among them is the deleterious effect on the attorney-client relationship that may follow when the client learns that it has been sued by its attorney. To avoid this result, among others, DR 5–105 mandates full disclosure by the attorney and the consent of all concerned. *See Cinema 5*, 528 F.2d at 1386. In the instant case, each party claims that the other tried to bargain away the conflict in exchange for cooperation in groundwater studies at the Sag Harbor site. However, the fact remains that Nabisco never consented to RRD & B's representation of Sag Harbor.

■ Thus, Nabisco's entitlement to the undivided loyalty of RRD & B has been abrogated. Since conflict is endemic to this situation, not even RRD & B's good faith belief that it can adequately represent both of its clients is sufficient to overcome the apparent conflict that arises when a law firm finds itself with its feet in opposing camps. *See Cinema 5*, 528 F.2d at 1387.

The policy behind Canon 5 has persuaded the court that Nabisco's motion to disqualify RRD & B from further representation of Sag Harbor should be granted. However, there is no merit to Nabisco's request for an injunction. Nabisco has not supported its contention that RRD & B may possess confidential information about its

corporate structure which would be relevant in the instant case.

RRD & B worked only on the Standard Brands cases. Not one of these actions involved issues concerning the relationship between Nabisco and its affiliates or subsidiaries. Most importantly, even assuming that RRD & B has acquired information pertinent to the instant action, there is absolutely no reason to believe that RRD & B would betray the confidences of its client.

As is often the case with disqualification motions, there has been no showing of any intentional wrongdoing or venality on the part of RRD & B. The court's decision is this case is premised upon its belief that preservation of the undivided loyalty which an attorney owes his client is of paramount importance.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that defendant Nabisco's motion to disqualify defendant Sag Harbor's counsel should be granted. However, Nabisco's motion for an injunction should be denied.