JUDGE DAY, District Judge,
dissenting.
¶167 I dissent from the majority’s decision and analysis as to Issue 1. Since I would remand for a new trial, I do not reach the remaining issues on appeal.
¶168 With regard to issue 1, whether the District Court abused its discretion when it denied KLemens’ motion to disqualify the Marra *322 firm from representing Schuff, I respectfully dissent from the Court’s opinion. I would hold that the District Court did abuse its discretion, and I would remand for trial with different counsel representing Schuff.
¶169 The Second Circuit in Cinema 5 Ltd. v. Cinerama, Inc. (2d Cir. 1976), 528 F.2d 1384, stated that a lawyer who would sue his or her own client, asserting in justification the lack of “substantial relationship” between the litigation and the work he or she has undertaken to perform for that client, is “leaning on a slender reed indeed.” Cinema 5 Ltd., 528 F.2d at 1386. This slender reed now also has the majority camped on its edges.
¶170 I agree with the majority that the Supreme Court has original and exclusive jurisdiction in all matters involving discipline of attorneys practicing law in this state. However, there is no issue regarding discipline of attorneys before this Court. The issue before the Court is whether the Marra firm should have been allowed to continue to represent the Plaintiff in this matter given the fact that it had, as a current client, the Defendant. District courts commonly issue orders that govern the conduct of attorneys in regards to particular litigation (e.g., contempt and discovery sanctions). These orders are under the district court’s inherent power to control litigation and to provide for fairness and justice and an orderly conduct of the proceedings. See § 3-1-111, MCA. See also Felix F. Stumpf, Inherent Powers of the Courts: Sword and Shield of the Judiciary, at 24-35 (1994). An order concerning disqualification is also within the discretion and authority of the district court.
¶171 In its discussion of the background of Montana’s Rules of Professional Conduct the majority indicates that the argument of Appellant raises two “inevitable” questions, the first being whether an alleged rule violation can be determined, as a matter of law, by a district court and secondly, if so, what effect does a proven violation have in an underlying civil proceeding. I disagree with the first part of this analysis. The issue before this Court is not whether the District Court erred in finding no rule violation concerning disqualification, but rather whether the District Court erred in finding that no disqualification of the Marra firm was necessary under the facts.
¶172 The majority cites Carlson v. Morton (1987), 229 Mont. 234, 745 P.2d 1133, to support its position that a district court cannot consider a Rules of Professional Conduct violation because such a violation is the exclusive jurisdiction of the Court. The Carlson case should *323 be limited to its facts. In Carlson the issue had to do with legal malpractice. The Plaintiff in that case failed to identify or call an expert witness to support his allegation that legal malpractice had occurred. Instead of naming an expert, the Plaintiff asserted the Defendant had violated various Disciplinary Rules of the Code of Professional Responsibility (replaced by the current Rules of Professional Conduct in 1985). The District Court ruled that charges of legal malpractice required expert testimony to delineate the degree of care expected of an attorney handling a client’s affairs. The Supreme Court agreed and said that an expert is necessary to prove legal malpractice and it was not sufficient to rely on alleged violations of the Code of Professional Responsibility. See generally Carlson, 229 Mont. at 237-41, 745 P.2d at 1135-38. The case has nothing to do with conflict of interest or a motion to the District Court to disqualify an attorney from handling the case because he or she is currently representing the opposing party in that case.
¶173 Rule 1.7 (a) of the Montana Rules of Professional Conduct provides that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.
¶174 It is undisputed that the Defendant in this case, Klemens, did not consent to its lawyer suing it in this case. It is also undisputed that Klemens was a client of the Marra firm, the firm representing the Plaintiff, on a number of other files. Finally, it is undisputed that after the motion to disqualify had been filed but prior to the hearing, the Marra firm fired Klemens as a client on all cases. The Marra firm then went to the hearing on the motion to disqualify and said that Klemens was a former client, not a current client, and therefore Rule 1.9 applied and not Rule 1.7. This “drop them like a hot potato” treatment of a client is conduct that should not be accepted by this Court. Flatt v. Superior Court (Cal. 1994), 885 P.2d 950.
¶ 175 The maj ority states the proper standard of review of attorney disqualification is whether the district court abused its discretion. I agree that it is within a district court’s discretionary powers to grant a motion to disqualify under the facts of this case. A district court has the right and the duty to see to it that, in the context in the proceedings before it, attorneys conduct themselves in such a way to promote, not impede, justice and fairness.
*324 ¶176 However, the district court abused its discretion when it considered this situation as a former client representation as opposed to a current client representation. The Flatt case, cited with approval by the majority, makes it clear that an attorney should not be able to fire a current client and thereby avoid a current client disqualification argument.
¶ 177 The District Court in this case applied the former client test after the Marra firm fired Klemens and then determined that no substantial relationship existed between the alleged “former” representation of Klemens by the Marra firm and the instant case. On that issue alone the decision of the District Court should be vacated and the case remanded for consideration under the proper analysis. The District Court abused its discretion because it applied the wrong analysis.
¶178 I agree with the majority that the Rules of Professional Conduct arise out of the fundamental principle that an attorney, as a fiduciary, owes a duty of undivided loyalty to his or her client. The basis for Rule 1.7, M.R.Pro.C., is the principle that when a client engages the services of a lawyer to handle a given piece of business, that client is entitled to feel that, until that business is finally disposed of in some manner, he or she has the undivided loyalty of the one upon whom he or she looks as his or her advocate and champion. Grievance Comm. v. Rottner (Conn. 1964), 203 A.2d 82. If, as in this case, the client is sued by his or her own attorney, who is representing him or her in another matter, all feeling of loyalty is necessarily destroyed, and the profession is exposed to the charge that it is interested only in money. See Grievance Comm., 203 A.2d at 84. Maintenance of public confidence in the bar requires an attorney who has accepted representation of a client to decline, while representing such client, any employment from an adverse party in any matter even though totally unrelated to the original retainer.
¶179 The Rules of Professional Conduct were not written in a vacuum. A district court should not have to hear a case in a vacuum. Rather, a district court should be able to rely on the Rules as an indication of the standard of conduct that is expected of attorneys in this state, especially as the Rules relate to conflicts of interest. In fact, the Supreme Court has demanded that each attorney comply with the Rules of Professional Conduct. To now state that a district court cannot look at the Rules of Professional Conduct for guidance and do what justice requires is a giant step backward.
*325 ¶180 In Cinema 5 Ltd., the Second Circuit, in a case involving a request for disqualification of plaintiff’s counsel because the defendant was represented by other members of plaintiff’s counsel’s firm, stated that the propriety of the conduct must be measured against the duty of undivided loyalty which an attorney owes to each of his clients. See Cinema 5 Ltd., 528 F.2d at 1386. The Second Circuit stated that where the relationship is a continuing one, adverse representation is prima facie improper and the attorney must be prepared to show, at the very least, that there will be no actual apparent conflict in loyalties or diminution in the vigor of his representation. Cinema 5 Ltd., 528 F.2d at 1386. I would urge that Montana adopt this rule and place the burden on the party promoting the dual representation to prove no prejudice.
¶181 It is interesting that this is a case of first impression in Montana. I submit that the reason that it is a case of first impression is that the common understanding and the common conscience of the bar is in accord with Rule 1.7(a), and the great majority of attorneys would not involve themselves in such a situation and would not contest such a disqualification. The paucity of authority governing the situation where, as in this case, a lawyer is still representing the client whom he or she sues clearly indicates the frailness and the improperness of such action.
¶182 The phrase “appearance of impropriety” was used under the old canons and disciplinary rules with the admonition that such should be avoided. The Rules of Professional Conduct do not use that phrase but the standard should not be wholly abandoned in spirit. Certainly concerns about the public’s perception of the legal profession bears some relevance when this Court views attorney conduct. While appearance of impropriety as a principle of professional ethics may be vague and open-ended, in this case it has meaning and weight. For a law firm to represent a client in one file, and sue it in another, creates an unsavory appearance of impropriety that is difficult if not impossible to dispel in the eyes of the public — or for that matter the bench and bar — by simply denying that prejudice will exist. Prejudice must be presumed.
¶183 Because of the need for public confidence and the fair and just administration of the law, the Court should conclude that the appearance of impropriety is so marked in this case that remand is necessary. This case is an example of situations in which an ordinary, knowledgeable citizen acquainted with the facts would conclude that *326 the multiple representation poses substantial risk of public disservice to either the public interest, or the interest of one of the parties. See Whitman v. Estate of Whitman (N.J.Super.Ct. Law Div. 1992), 612 A.2d 386.
¶184 In summary, the trial court erred in its analysis of the situation before it concerning disqualification by reviewing this situation as a “former” client rather than a “current” client case. It allowed the Marra firm to fire its client and apparently take the better of the cases before it. Under these facts and circumstances I would find that the District Court abused its discretion when it denied the motion to disqualify the Marra firm. While it may not be necessary to do so, I would also urge the adoption of the legal principle that in a case involving an attorney suing a client such representation is prima facie improper and the attorney who seeks to represent both must come forward with substantial supporting facts to indicate prejudice will not result and vigorous representation can be maintained on behalf of both clients. The burden of proof should be with the attorney who is stepping on the lip of that slender reed referred to in Cinema 5 Ltd. When that reed breaks, public trust is gone, client rights are violated and the attorney’s professional reputation is harmed. It is for these reasons that I dissent.