**PFIZER, INC., et ano., Plaintiffs,**

v.

**STRYKER CORPORATION, et ano., Defendants.**

**No. 02 CIV. 8613(LAK).**

United States District Court, S.D. New York.

April 10, 2003.

Beth L. Kaufman, David B. Gordon, Shoeman, Updike & Kaufman, LLP, New York City, for Plaintiffs.

Herbert J. Stern, Joel M. Silverstein, Stern Greenberg & Kilcullen, Roseland, NJ, for Defendants.

### MEMORANDUM OPINION

KAPLAN, District Judge.

Defendant Stryker Corporation ("Stryker") moves for an order enjoining plaintiffs and their attorneys from retaining or engaging the law firm of Goodell, Devries,

Leech & Dann of Baltimore, Maryland (the "Goodell firm"), from representing plaintiffs in this action or seeking, obtaining, or paying for, directly or indirectly, any legal or consulting services of that firm concerning this action. It contends that such relief is warranted because the Goodell firm was representing Stryker in two product liability suits in Virginia at the time it assisted plaintiffs' New York counsel in filing this action. The motion is the substantial equivalent of a motion to disqualify counsel for violation the Code of Professional Responsibility, but takes this form because the Goodell firm, although concededly actively involved in the prosecution of this case, has not sought leave for any of its attorneys to appear *pro hac vice* and thus has filed no appearance.

*Facts*

In 1998, plaintiff Pfizer, Inc. ("Pfizer") and defendant Stryker entered into a stock purchase agreement pursuant to which Stryker bought assets and stock of a Pfizer subsidiary that manufactured, among other things, artificial replacement knee joints. Pfizer retained liability for product liability claims arising from use or application of the products prior to closing. Stryker assumed liability for such claims arising from post-closing use or application.

The agreement obliged Pfizer and Stryker to cooperate in the defense and settlement of product liability claims relating to the relevant products, each providing the other and its attorneys with access to employees, documents, records, and facilities relevant to the business. They executed also a joint defense agreement to similar effect. Pfizer retained sole control over the defense, trial and settlement of claims as to which it bore the contractual risk of liability.[1]

In the fall of 2000, a series of product liability cases involving the relevant product were brought in Virginia, including both pre- and post-closing actions, some against both Pfizer and Stryker. Although they initially were represented by separate counsel, Stryker in due course made a claim against Pfizer for indemnification and tendered to Pfizer the defense of all of the lawsuits. Pfizer accepted the tender as to pre-closing and rejected it as to post-closing cases. Subsequently, it authorized the Goodell firm—which has represented Pfizer in hundreds of product liability cases since 1985—to appear for Stryker in two pre-closing Virginia cases, one of which was dismissed earlier this year. Goodell entered appearances on behalf of Stryker on October 24 and 25, 2002. Notwithstanding Goodell's appearance on its behalf, Stryker's separate counsel remained in the cases. Pfizer and Stryker have continued to cooperate in the defense of the product liability cases while maintaining confidentiality as against outsiders.

Pfizer commenced this action on October 28, 2002, just days after the Goodell firm entered appearances on behalf of Stryker in the two Virginia cases. It is undisputed that the Goodell firm acted for Pfizer in bringing this action and has continued to do so. Indeed, after Stryker objected to its actions and attacked it on a prior application to this Court, it filed, on January 13, 2003, a notice of intent to withdraw its appearance as co-counsel for Stryker in the Virginia actions, thus attempting to drop one of its clients like the proverbial "hot potato."

---

1. To be sure, one might imagine circumstances in which either party might be unable to discharge its obligations under these agreements and in which the other therefore might wind up with liability that the agreements allocated elsewhere.

*Discussion*

It ought by now to go without saying that a lawyer may not ethically sue a current client, at least absent extraordinary circumstances.[2] This is precisely what the Goodell firm did here. In consequence, Stryker invokes *Cinema 5 Ltd. v. Cinerama, Inc.*[3] for the proposition that the Goodell firm should be disqualified unless it has shown "at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of [its] representation."[4] Plaintiffs and the firm nevertheless contend in substance that *Cinema 5* does not apply here because (1) the Goodell firm's representation of Stryker was part of a joint defense of both Stryker and plaintiffs in circumstances in which Stryker had no reasonable expectation of confidentiality or loyalty as against plaintiffs and, in any case, (2) Stryker did not have a traditional attorney-client relationship with the firm. They argue also, based in part on the foregoing, that disqualification in any event should be denied because there is no serious risk of "trial taint" consequent to the firm's representation of Stryker.

■ As this Court has written:

"Disqualification motions are subject to abuse for tactical purposes. They may deprive a party of the counsel of its choice and otherwise delay the resolution of the underlying legal dispute. Moreover, professional disciplinary bodies are available to police the behavior of counsel."[5]

In consequence, the Second Circuit has made clear that disqualification is appropriate, at least in most cases, only if a violation of the Code of Professional Responsibility gives rise to "a significant risk of trial taint."[6]

The Court is unpersuaded that there is a serious risk of trial taint from the Goodell firm's involvement in the prosecution of this action. Plaintiffs argue—without contradiction by Stryker—that Stryker never imparted any confidential information to the Goodell firm, much less any such information that it expected would not be shared with plaintiffs in the course of Goodell's joint defense of plaintiffs and Stryker in the underlying state court litigation. Indeed, it has no factual response to the plaintiffs' assertion that plaintiffs and Stryker are sometimes allied and sometimes adverse in a complex relationship and that Stryker always has viewed the Goodell firm, even when it has appeared in defense of both plaintiffs and Stryker, as Pfizer's attorneys. Furthermore, Stryker expressly disavows any contention that the Goodell firm is in possession of confidences imparted by Stryker and asserts that "this motion has always been based solely and unequivocally upon the Goodell's firm suing [plaintiff]—a *current* client—in breach of its duty of loyalty to Stryker under Canon 5."[7] It nevertheless argues that disqualification is warranted because there

**2.** *E.g., Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976); *Commercial Union Ins. Co. v. Marco Int'l Corp.,* 75 F.Supp.2d 108, 110 (S.D.N.Y.1999); *see also* DR 5–105 (prescribing the ethical rules that govern simultaneous representations).

**3.** 528 F.2d 1384.

**4.** *Id.* at 1387.

**5.** *Etna Prods. Co. v. Tactica Int'l Inc.,* 234 F.Supp.2d 442, 445 (S.D.N.Y.2002).

**6.** *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d Cir.1981); *cf. Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983) (noting the high burden that a party must satisfy when moving to disqualify former counsel now representing an adverse party).

**7.** Def. Reply Mem. 7–8.

always is a significant risk of trial taint when an attorney sues a current client.[8]

■ Stryker's argument is overly broad. *Glueck* made clear that a risk of trial taint inheres in circumstances that could impair the ability of the court to reach a fair and just result as, for example, impairment of the attorney's incentive to act vigorously on behalf of the client or by giving the client in the second suit an unfair advantage borne of the attorney's representation of its adversary, as for example through access, via the attorney, to the confidences of the adversary.[9] These and similar risks almost always exist when a lawyer sues a current client. As this Court recognized in *Commercial Union*, however, there are unusual instances in which the nature of the first attorney-client relationship will be such as to eliminate any risk of trial taint.[10] Where this is so, a rule of *per se* disqualification would serve only to enforce the attorney's duty of loyalty to the client. It would not protect the integrity and accuracy of the court's decision-making.

■ There is nothing in *Glueck* or its progeny that suggests that the virtually *per se* rule of disqualification of *Cinema 5* survives even in such circumstances.[11] Accordingly, in view of Stryker's implicit but nevertheless well-advised concession that the nature of its relationship with the Goodell firm and plaintiffs was such that there is no meaningful risk that Goodell's involvement in this case involves any material risk to the accuracy or integrity of the Court's adjudicative function, the Court declines to foreclose the Goodell firm from participating in this case. Even if the trial taint test were not applicable here, the Court would reach the same result under *Cinema 5* because it is satisfied that the Goodell firm has shown "that there will be no actual or apparent conflict in loyalties or diminution in the vigor of [its] representation." [12]

### Conclusion

The motion is denied.

Having resolved the motion, it is important to emphasize the extremely narrow scope of this ruling. Nothing herein should be taken as condoning the actions of the Goodell firm and its members in suing its current client.[13] The question whether those actions threaten this Court's processes is quite distinct from the question whether they breached the Code and the Disciplinary Rules and therefore should be subjected to professional discipline. That is a matter for another body.

SO ORDERED.

---

8. *Id.* 3–4.

9. *See Glueck,* 653 F.2d at 750.

10. *Commercial Union Ins. Co.,* 75 F.Supp.2d. at 111–13.

11. *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.,* 189 F.Supp.2d. 20, 23–24 (S.D.N.Y.2002), is not to the contrary. Judge Rakoff there noted that the Circuit has not applied the trial taint test in a case of concurrent representation, which is true enough, and declined to do so on the facts of that case. In coming to that conclusion, however, he noted the existence of potential for conflict in the concurrent representation that went well beyond the trial context, a circumstance absent here. Also, that situation lacked the attenuated lawyer-client relationship characteristic of that between the Goodell firm and Stryker.

12. *Cinema 5,* 528 F.2d at 1387.

13. Without deciding the point or attempting to address its other contentions, Pfizer's attempt to characterize Stryker's role in the Virginia cases as that of a nominal defendant lacking any substantial economic interest in the outcome appears to be misguided.